United States District Court
Southern District of Texas
**ENTERED**
July 08, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CARLOS AMALIO REYNA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-420 |
| | § | |
| STATE FARM LLOYDS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION AND ORDER</u>

Pending before the Court is the motion for summary judgment,[1] filed by State Farm Lloyds ("State Farm") and Rachel Fisher (collectively "Defendants"). Carlos Amalio Reyna ("Mr. Reyna") and Guadalupe E. Reyna ("Mrs. Reyna") (collectively "Plaintiffs") timely responded to the motion for summary judgment.[2] Plaintiffs have also filed a motion for a continuance of Defendants' motion for summary judgment.[3] Additionally, State Farm has filed an unopposed motion for leave to file a second amended answer.[4]

After considering the motions, responses, record, and relevant authorities, the Court **DENIES** Plaintiffs' motion for continuance of Defendants' motion for summary judgment, **GRANTS** Defendants' motion for summary judgment, and **DENIES** the motion for leave to file a second amended answer as moot.

---

[1] Dkt. No. 51 ("Motion for Summary Judgment").
[2] Dkt. No. 55 ("Response").
[3] Dkt. No. 54 ("Motion for Continuance").
[4] Dkt. No. 53.

## I.  Background

Plaintiffs' claims arise from wind and hail storms that struck the Rio Grande Valley in March and April 2012, causing damage to their property. [5] On May 8, 2012, Plaintiffs reported an insurance claim to State Farm.[6] Thereafter, State Farm had the property inspected on May 8, 2012, estimating the amount of loss at $11,609.75.[7] State Farm then issued a payment to Plaintiffs in the amount of $6,607.24 after applying depreciation and deductible.[8] In June 2012, State Farm received an invoice from Plaintiffs' contractor, ADG General Contractors, LLC ("ADG"), informing State Farm that work was completed as "per the insurance proceeds."[9] Mr. Reyna also verbally informed State Farm that all repairs had been made.[10] Though the invoice did not state what repairs were made, the actual repairs totaled $9,749.75, the amount of loss in State Farm's estimate minus the policy's deductible.[11] Per ADG's invoice and Mr. Reyna's representation that repairs had been completed, State Farm then issued payment of the recoverable depreciation in the amount of $3,467.26.[12] Thereafter, Plaintiffs had no other contact with Defendants regarding the claim prior to filing the instant suit.[13]

On April 16, 2014, Plaintiffs filed the instant lawsuit in state court alleging various insurance related causes of action against Defendants.[14] Subsequently, on June 4, 2014, Defendants removed the case to this Court.[15] After Plaintiffs withdrew their motion to remand resulting in dismissal of then-defendant Richard Freymann, who was improperly joined in this

---

[5] Dkt. No. 1, Exh. 1 at p. 9.
[6] Dkt. No. 51, Exh. B at ¶ 2.
[7] *Id*. at ¶ 3.
[8] *Id*.
[9] *Id*. at ¶ 4.
[10] *Id*.
[11] *Id*.
[12] *Id*.
[13] *Id*. at ¶ 6.
[14] Dkt. No. 1, Exh. 1 at p. 3.
[15] Dkt. No. 1.

suit,[16] the Court set this case on an alternative schedule in an attempt to encourage resolution of Plaintiffs' claims without formal discovery or Court intervention.[17] On January 13, 2015, the parties appeared before the Court for a status conference, where it became clear to the Court that no resolution was reached.[18] Accordingly, the Court issued a scheduling order consistent with Rule 26 of the Federal Rules of Civil Procedure.[19]

On February 3, 2015, Plaintiffs invoked the appraisal provision of the insurance policy at issue,[20] which provides in relevant part:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss.[21]

Shortly after, on February 23, 2015, State Farm declined Plaintiff's appraisal demand.[22] On February 27, 2015, the parties stipulated to the dismissal of then-defendant Aldo Hanze, Jr.[23] Thereafter, Plaintiffs filed an opposed motion to compel appraisal.[24] On May 11, 2015, the Court granted Plaintiffs' motion to compel appraisal and ordered the parties to conduct appraisal regarding the amount of loss to the property, excluding the roof, gutter, window air conditioning

---

[16] Dkt. No. 13.
[17] Dkt. No. 14.
[18] *See* Minute Entry, January 13, 2015.
[19] Dkt. No. 36.
[20] Dkt. No. 51, Exh. B at p. 3; Exh. B-5 (appraisal invocation letter).
[21] Dkt. No. 51, Exh. A at p. 38.
[22] Dkt. No. 51, Exh. B-6 (letter declining appraisal);
[23] Dkt. No. 39.
[24] Dkt. No. 41.

unit, satellite system, and skylight reflective tube.[25] The Court ordered the exclusion of these areas of the property because it found no disagreement between the parties as to the amount of loss given Plaintiffs received payment ( totaling $9,749.75) for the repairs of these areas without contesting State Farm's payment.[26] In turn, the Court abated the case pending completion of the appraisal process.[27]

On February 23, 2016, the parties appeared before the Court for a status conference and Defendants apprised the Court that an appraisal award was complete and that it filed a motion to lift abatement for the purposes of filing a motion for summary judgment.[28] Consequently, the Court lifted the abatement,[29] and the instant motion for summary judgment was filed. The Court now addresses the motions before the Court.

## II. Summary Judgment Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30]   A fact is "material" if its resolution could affect the outcome of the action,[31] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[32]   As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[33]

---

[25] Dkt. No. 44.
[26] *Id.* at pp. 6-8.
[27] *Id.* at p. 10.
[28] *See* Minute Entry for February 23, 2016.
[29] *Id.*
[30] FED. R. CIV. P. 56(a).
[31] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)(internal quotation marks and citation omitted).
[32] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)(citation omitted).
[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[34] In this showing, "bald assertions of ultimate fact" are insufficient.[35]  Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[36]  On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[37]  If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[38]  This demonstration must specifically indicate facts and their significance,[39] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[40]

### a.  Summary Judgment Evidence and Objections

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[41]  Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[42]  Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the

---

[34] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[35] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)(citation omitted).

[36] *See Celotex Corp.*, 477 U.S. at 323.

[37] *See id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).

[38] *See id.*

[39] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[40] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)(citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[41] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)(citations omitted).

[42] *See id.*

evidence for consideration.[43]  Parties may cite to any part of the record, or bring evidence in the motion and response.[44]  By either method, parties need not proffer evidence in a form admissible at trial,[45] but must proffer evidence substantively admissible at trial.[46]

Defendants proffer a copy of the policy at issue,[47] and both parties submit portions of the claim file State Farm maintained on Plaintiffs.[48] Defendants also attach a declaration of State Farm claim specialist Mark Hendrix ("Hendrix"), along with its supporting attachments,[49] and a copy of a judicial opinion from a sister court in the Southern District of Texas.[50] In support of their position, Plaintiffs submit an affidavit from Mr. Reyna.[51] Plaintiffs object to the Hendrix Declaration on various grounds. The Court must now determine if the submitted documents are competent summary judgment evidence.

      *b.  Analysis*

Plaintiffs object to the admissibility of Hendrix's declaration on the ground it is not based on Mr. Hendrix's personal knowledge and move to strike the declaration from the summary judgment record.[52] Furthermore, Plaintiffs argue it is "obvious" from the declaration's supporting attachments that Hendrix (1) did not communicate with Plaintiffs when they reported their claim, (2) did not inspect the property, and in general, (3) never spoke with Plaintiffs.[53]

---

[43] *See* FED.R.CIV. P. 56(e).
[44] *See* FED. R. CIV. P. 56(c).
[45] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[46] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[47] Dkt. No. 51, Exh. A.
[48] *See* Dkt. No. 51., Exhs. B-1 – B-9; Dkt. No. 55, Exh. B.
[49] Dkt. No. 51, Exh. B ("Hendrix Declaration") and Exhs. B-1 – B-9.
[50] Dkt. No. 51, Exh. C.
[51] Dkt. No. 55, Exh. A.
[52] Dkt. No. 55 at ¶ 14.
[53] *Id.* at ¶ 21.

Thus, according to Plaintiffs, "Mr. Hendrix's statements in his [d]eclaration are not based on personal knowledge and are conclusory statements that lack any proper predicate."[54]

However, Hendrix's declaration clearly states that "[t]he information contained herein is based on my personal knowledge and/or my review of State Farm Lloyds' (State Farm) records, and I certify that the facts and statements contained in this declaration are true and correct."[55] Additionally, Hendrix's declaration explains that his personal knowledge is based on the fact that in his capacity as a State Farm claim representative, he became familiar with Plaintiffs' damage claim file.[56] Therefore, the Court distinguishes between statements simply reiterating the notes from the attached records and these statements as a State Farm claim representative with corporate knowledge. The former constitutes hearsay and the objection to those statements is sustained. The latter are proper summary judgment evidence.

Although Plaintiffs do not directly attack the admissibility of the claim file and other supporting documents attached to Hendrix's declaration, the Court does note that it is well established that Rule 803(6) of the Federal Rules of Evidence creates a business records exception to the hearsay rule. Under Rule 803(6), a record is excluded from the rule against hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted   activity of a business, organization, occupation, or calling, whether or not for profit; (C) making  the  record  was  a  regular  practice  of  that activity; (D) all these conditions are  shown by the testimony of the custodian or another qualified witness . . . .[57]

The Court finds Hendrix's declaration sufficiently attests that the records meet the requirements for admissibility. Hendrix avers that the supporting exhibits to his declaration are:

---

[54] *Id.*
[55] Dkt. No. 51, Exh. B at ¶ 1.
[56] *Id*. at ¶ 2.
[57] Fed.R.Evid. 803(6).

true and correct copies of State Farm business records which were either obtained by or were made by, or from information transmitted by persons with knowledge of the events recorded therein, and the entries were made at or near the time of the events recorded. It is the regular practice of State Farm to keep these types of documents in the course of regularly conducted business.[58]

Therefore, the Court holds the Hendrix declaration and related claim file records are competent summary judgment evidence. Accordingly, except as noted above, the Court **OVERRULES** Plaintiffs' objection to these documents.

### III. Discussion

#### a. *Plaintiffs' Motion for Continuance*

The Court now addresses Plaintiffs' motion for continuance of Defendants' motion for summary judgment. Generally, Plaintiffs allege in their motion for continuance that the motion for summary judgment is premature, asserting that insufficient discovery has been completed to allow Plaintiffs to properly respond to the motion for summary judgment.[59] Additionally, Plaintiffs cite to this Court's holding in *Cavazos v. State Farm Lloyds* [60] as a basis for continuing judgment on Defendants' motion for summary judgment.[61]

Rule 56(d) provides courts with discretion to defer ruling on a motion for summary judgment or to allow a nonmoving party additional time to obtain further discovery.[62] In order to obtain such relief, however, the nonmovant must show "by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition."[63] In this manner, the nonmovant must set forth "how additional discovery will create a genuine issue of material

---

[58] Dkt. No. 51, Exh. B at ¶ 10.
[59] Dkt. No. 54 at ¶ 10; ¶ 12; ¶¶ 15-18.
[60] 2015 WL 8074063, (S.D. Tex. Dec. 4, 2015).
[61] Dkt. No. 54 at ¶¶ 13-14.
[62] Fed. R. Civ. P. 56(d).
[63] *Id*. (emphasis added).

fact."[64] Relief under Rule 56(d) is not warranted if either (1) the proffered basis does not present a reasonable likelihood that further discovery would produce evidence creating a fact issue,[65] or (2) such evidence would not create fact issues for each essential element of the nonmovant's claim.[66]

Here, Plaintiffs indicate in their motion for continuance that they "need additional time to conduct written discovery and to take Defendants' deposition in order to obtain material testimony that is essential" to their ability to present material summary evidence showing Defendants' breaches of the insurance contract, bad faith and violations of the Texas Insurance Code.[67] Furthermore, Plaintiffs assert that they need additional time to take the "deposition of State Farm's corporate representatives, as well as of the individual adjuster who actively participated in the investigation of Plaintiffs' claim."[68] Nevertheless, the Court finds that Plaintiffs have failed to identify any additional discovery likely to create a fact issue as to each essential element.

As Plaintiffs recognize, an appraisal award has already determined the amount of loss in this case.[69] Thus, the Court will discuss the implications of the appraisal award on the breach of contract claim and extra-contractual claims below. In doing so, the Court will specifically address Plaintiffs' ineffectiveness in creating a fact issue preventing summary judgment. Next, Plaintiffs' reliance on *Cavazos* for the proposition that cases abated during the appraisal process

---

[64] *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 448 (5th Cir. 2001) (citing Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 28 F.3d 1388, 1395 (5th Cir. 1994)).
[65] *Beverly v. Wal-Mart Stores, Inc.*, 428 F.App'x 449, 451 (5th Cir. 2011) ("If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion.") (quoting *Resolution Trust Corp. v. Sharif–Munir–Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993)).
[66] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's cause necessarily renders all other facts immaterial.")
[67] Dkt. No. 54 at ¶¶ 15-16.
[68] *Id.* at ¶ 16.
[69] Dkt. No. 55 at ¶ 9 ("the appraisal process . . . determined that Plaintiffs' property sustained numerous damages that . . . amounted to at least $22,407.68").

necessarily demand continuance given that discovery has not "fully developed" is misplaced.[70] In *Cavazos*, this Court denied the defendants' motion for summary judgment on the plaintiffs' breach of contract claim because it found plaintiffs' evidence had created a genuine issue of material fact. However, in the instant case, Plaintiffs have failed to create a genuine issue of material fact on their breach of contract claim, as will be explained below.

On the basis of the standard discussed above, and the reasons more fully set forth below, the Court **DENIES** Plaintiffs' motion for continuance.

### b. Breach of Contract Claim

Defendants' argument in favor of summary judgment proceeds sequentially to address the claim for breach of contract before the extra-contractual claims, a rubric which the Court finds helpful for the analysis.

Defendants claim that Plaintiffs are estopped from maintaining a breach of contract claim as a matter of law based on State Farm's timely payment of the appraisal award.[71] Because federal jurisdiction is invoked on the basis of diversity of citizenship, this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[72] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[73]

Indeed, in Texas, "[t]he effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of

---

[70] Dkt. No. 54 at ¶¶ 13-14.
[71] Dkt. No. 51 at ¶ 9.
[72] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[73] *Id*. (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).

liability for the court."[74]   In breach of contract cases where liability derives from an allegation that the insurer wrongfully underpaid a claim, Texas law dictates that the insured is estopped from maintaining a breach of contract claim when the insurer makes a proper payment pursuant to the appraisal clause.[75]   Accordingly, in the instant case, Plaintiffs are effectively foreclosed from bringing a breach of contract claim due to State Farm's payment of the appraisal award, unless Plaintiffs successfully raise an issue of fact as to the validity of the appraisal process, or on some distinct contractual provision.

Here, State Farm timely responded to the initial claim and State Farm paid the appraisal award to Plaintiffs shortly after receiving the award.[76] Nevertheless, Plaintiffs contend that State Farm is still in breach of contract on several grounds. First, Plaintiffs accuse Defendants of failing to pay the actual cash value of the appraisal award and contend Defendants improperly deducted prior payments issued to Plaintiffs "as those damages were not part of the appraisal process."[77] According to Plaintiffs, Defendant's compliance with the Court's order to exclude certain damages from the appraisal process was improper because those damages failed to be submitted to appraisal.[78] "In other words, in order to comply with its contractual duties, State Farm had to issue payment for the whole amount of the appraisal award and Defendants' deduction of damages that were never included in the appraisal process was neither warranted nor reasonable."[79]

---

[74] *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Wells v. American States Preferred Ins. Co.,* 919 S.W.2d 679, 683-85 (Tex. App.—Dallas 1996, writ denied)).
[75] *See Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 368 (5th Cir. 2012) (internal quotation marks and citation omitted).
[76] Dkt. No. 51, Exh. B at p. 4.
[77] Dkt. No. 55 at ¶ 8.
[78] *Id.* at ¶ 33.
[79] *Id.* at ¶ 34.

Next, Plaintiffs argue Defendants underpaid Plaintiff's claim since the appraisal process determined an amount of loss "significantly more than the amount paid by State Farm during the handling of the claim."[80] Plaintiffs suggest that an appraisal award may estop them from "contesting the issue of the amount of the damages for which State Farm admitted liability initially," but claim their breach of contract claim is based "both [on] the failure to properly estimate the amount of the damages admitted by State Farm but also the denial of coverage . . . when such coverage clearly should have been extended."[81]

Finally, Plaintiffs note their policy provides for two years from the date of loss to perform necessary repairs and/or replacements to receive payment for withheld depreciation.[82] Plaintiffs also note that when State Farm paid the appraisal award, it stated Plaintiffs had until December 26, 2017 to complete all repairs and/replacement of the damaged property to be entitled to replacement cost benefits and withheld depreciation.[83] Plaintiffs then argue that State Farm is in breach of the insurance policy for providing Plaintiffs a period less than two years after its "partial and inadequate payment of the appraisal award,"[84] and for "unilateral modification of the insurance contract."[85] The Court finds these arguments unpersuasive.

Defendants properly deducted prior payments from the appraisal award. As Defendants state in reply, inspecting the record disposes of Plaintiffs' first argument.[86] When State Farm initially inspected the property on May 16, 2012, it estimated the amount of Coverage A, Dwelling loss to be $11,609.75.[87] At no time during that inspection did Plaintiffs indicate there

---

[80] *Id.* at ¶ 9.
[81] *Id.* at ¶ 36.
[82] *Id.* at ¶ 37.
[83] *Id.*; Dkt. No. 51, Exh. B-9.
[84] Dkt. No. 55 at ¶ 38.
[85] *Id.* at ¶ 39.
[86] *See* Dkt. No. 59.
[87] Hendrix Declaration at ¶ 3; Dkt. No. 51, Exh. B-1 at p. 2.

was damage to the interior of the property.[88] State Farm issued to Plaintiffs the Coverage A actual cash value payment of $6,421.66 — the replacement cost value less the policy deductible ($1,860.00) and recoverable depreciation ($3,467.26).[89] State Farm also issued payment of the recoverable depreciation in the amount of $3,467.26 after Plaintiffs represented repairs had been completed.[90] The Court later compelled appraisal but excluded the dwelling roof, gutter, window air conditioning unit, satellite system, and skylight reflective tube from the appraisal process.[91]

On or about January 14, 2016, State Farm received a copy of the appraisal award setting the amount of loss at $22,407.68 on a replacement cost basis, and $19,026.48 on an actual cash value basis.[92] However, the appraisal award included the Court excluded property and related amounts.[93] Thus, State Farm tendered $4,416.73— the replacement cost value less the policy deductible ($1,860.00), depreciation ($3,381.20), prior payments ($9,749.75),[94] and additional living expenses available if incurred ($3,000).[95] Thus, Plaintiffs' argument fails because the prior payments were properly deducted from the appraisal award as ordered by the Court.

Regarding Plaintiffs' second argument that the appraisal award shows State Farm breached the contract by failing to properly estimate the amount of damages, the Court notes that contrary to Plaintiffs' assertions, Texas law clearly holds the discrepancy between the initial estimate and the appraisal award cannot be used as evidence of breach of contract. In *Breshears v. State Farm Lloyds*, the court held:

> [Plaintiffs] may not use the fact that the appraisal award was different than the
> amount originally paid as evidence of breach of contract, especially when the

---

[88] Hendrix Declaration at ¶ 3.
[89] *Id.*
[90] *Id.* at ¶ 4.
[91] Dkt. No. 44; Hendrix Declaration at ¶ 7.
[92] Hendrix Declaration at ¶ 8; Dkt. No. 51, Exh. B-8.
[93] Dkt. No. 51, Exh. B-8, Item 72("Undisputed Per Courts"). The Court notes this was not Item 71 as Defendants state in its reply. *See* Dkt. No. 59 at ¶ 3.
[94] Hendrix Declaration at ¶ 5.
[95] Hendrix Declaration at ¶ 9; Dkt. No. 51, Exh. B-9.

contract they claim is being breached provides for resolution of disputes through appraisal.[96]

Here, the language of the appraisal clause, as in *Breshears*, describes disagreement as to the amount of loss as a condition precedent to the appraisal process,[97] rendering the asserted discrepancy an immaterial fact issue for a breach of contract claim.

Moreover, the Court is unpersuaded by Plaintiffs' argument that State Farm breached the contract by initially denying coverage to certain items which should have been covered. Plaintiffs are essentially arguing the exact same thing twice, albeit with different wording. In essence, Plaintiffs appear to be alleging that: (1) State Farm breached the contract by failing to properly estimate the amount of damages as evidenced by the disparity in the appraisal award; and (2) State Farm breached the contract by failing to properly estimate the amount of damages as evidenced in the appraisal award *because it did not include coverage to certain areas of the property in its initial estimate.*

Simply put, in both scenarios, Plaintiffs describe the breach of contract claim as based on Defendants' initial assessment not matching the appraisal award, *i.e.* the fact pattern considered in *Breshears*. Therefore, even if Plaintiffs' factual assertions are correct, they have failed to raise a genuine issue of material fact.

Next, under the terms of the contract, State Farm must pay "only the actual cash value at the time of the loss[.]"[98] Furthermore, the contract states that "when the repair is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of your property."[99] Moreover, the contract provides that in order to receive additional payments on a replacement cost basis,

---

[96] *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, pet. denied).
[97] Dkt. No. 51, Exh. A at p. 38.
[98] *Id.* at p. 16.
[99] *Id.*

Plaintiffs must have completed the repairs to the property within two years from the date of loss. As noted earlier, the date of loss in this case is March or April 2012. Thus, strictly adhering to the terms of the contract, the parties can no longer comply with this provision.

However, when State Farm paid the appraisal award, it advised Plaintiffs that they could still receive replacement cost benefits because State Farm would not count any of the time between when it initially inspected the property on May 16, 2012  to when the appraisal award was paid on January 22, 2016.[100]  Furthermore, State Farm specifically extended the time for Plaintiffs to complete repairs to December 26, 2017.[101] Thus, contrary to the two year provision under the contract, State Farm is affording Plaintiffs more than five years from the original date of loss to recover replacement cost benefits.

The Court fails to see how State Farm is in breach of contract simply by extending the time period by which Plaintiffs must complete these repairs in order to receive replacement cost benefits. This extension of time inures to Plaintiffs' benefit alone. Therefore, the Court finds that the existence, timely payment, and acceptance of the binding and enforceable appraisal award estops Plaintiffs from asserting their breach of contract claim, and that summary judgment as to this claim is appropriate.

### c.  Extra-Contractual Claims

Plaintiffs allege extra-contractual claims against State Farm for (1) committing violations of Chapters 541 and 542 of the Texas Insurance Code; (2) engaging in fraud and conspiracy to commit fraud; and (3) breaching the common law duty of good faith and dealing.[102] Additionally, Plaintiffs allege extra-contractual claims against Fisher for committing violations of Chapters 541 of the Texas Insurance Code and engaging in fraud and conspiracy to commit

---

[100] Dkt. No. 51, Exh. B-9.
[101] Dkt. No. 54, Exh. B-7 at p. 2.
[102] *See* Dkt. No. 1, Exh. 1 at p. 9-29.

fraud.[103] The Court commences its analysis of these claims by recognizing the principle that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract."[104] The exceptions to this rule are the insurer's (1) failure to timely investigate the insured's claim or (2) commission of "some act, so extreme, that would cause injury independent of the policy claim."[105]

Defendants generally argue that Plaintiffs cannot maintain any extra-contractual causes of action because they are "derivative of Plaintiffs' now defunct breach of contract claim" and because State Farm timely tendered the appraisal award.[106]  Lastly, Defendants argue Plaintiffs fail to allege facts that would give rise to an independent injury claim.[107]

### i. Bad Faith Claims

In Texas, the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under the Texas Insurance Code; both extra-contractual claims share the same predicate for recovery, such that evidentiary insufficiency is equally dispositive.[108]  Relevant to the disposition of this case, the Texas Supreme Court has held that an insured's bad faith claims must fail as a result of the Court's resolution of the breach of contract claim in the insurer's favor, unless the insured can demonstrate actions or omissions that caused

---

[103] *Id.*

[104] *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)). The Court is mindful that the Fifth Circuit has certified to the Texas Supreme Court the question of "[w]hether, to maintain a cause of action under Chapter 541 of the Texas Insurance Code against an insurer that wrongfully withheld policy benefits, an insured must allege and prove an injury independent from the denied policy benefits?" *In Re Deepwater Horizon*, 807 F.3d 689, 701 (5th Cir. 2015). However, here, there is no evidence to raise a fact issue that State Farm wrongfully withheld benefits.

[105] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

[106] Dkt. No. 51 at ¶ 14.

[107] *Id.*

[108] *See Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied); *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)).

an injury independent of those that would have resulted from the wrongful denial of the policy benefits.[109]

To the extent Plaintiffs even sufficiently alleged extra-contractual claims in their original petition, the bad-faith causes of action relate solely to Defendants' investigation and handling of Plaintiffs' policy claim. Plaintiffs do not allege that these claims extend beyond the coverage dispute. Thus, far from providing evidence creating a genuine issue of material fact on these claims, Plaintiffs have failed to even allege an action which would constitute an independent injury. Accordingly, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiff's common-law and statutory claims of bad faith.

### ii. Prompt Payment of Claims

Similarly, Plaintiffs brought a claim under Chapter 542 of the Texas Insurance Code against State Farm for its alleged failure to timely pay Plaintiffs' claims. In Texas, courts have constantly held that "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."[110] Here, it is undisputed that State Farm timely issued payment of the appraisal award. Furthermore, as previously noted, State Farm has afforded Plaintiffs until December 2017 to complete the repairs to the property in order to receive replacement cost benefits.

Thus, because Plaintiffs have failed to allege an action which would constitute a violation independent of the now-resolved payment dispute, the Court **GRANTS** summary judgment in State Farm's favor on this claim as well.

---

[109] *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010) (internal citation omitted).

[110] *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) (collecting cases), *overruled on other grounds*, *In re Cypress Texas Lloyds*, No. 14-11-00713-CV, 2011 WL 4366984, at *1 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet. h.) (mem. op.).

    *iii. Fraud & Conspiracy*

  Lastly, Defendants pray that the Court dismiss all the remaining claims as a matter of law, as they are derivative of Plaintiffs' defunct breach of contract claim.[111]  To the extent these allegations even properly state a claim, Defendants have sufficiently showed the absence of a genuine issue of material fact by proffering evidence of proper completion of the appraisal process and tendering of payment.  In contrast, Plaintiffs have failed to offer evidence to the contrary.  As a result, the Court **GRANTS** summary judgment in favor of Defendants as to Plaintiffs' fraud and conspiracy claims.

## IV. Holding

  For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for continuance of Defendants' motion for summary judgment. The Court hereby **GRANTS** Defendants' motion for summary judgment in its entirety and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. State Farm's motion for leave to amend is **DENIED** as moot. Finally, the Court reserves the right to address Rule 11 issues. A final judgment will issue separately.

  IT IS SO ORDERED.

  DONE at McAllen, Texas, this 8th day of July, 2016.

            _____
            Micaela Alvarez
            United States District Judge

---

[111] Dkt. No. 13 at ¶ 19.